# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DYLAN M. HILLS,**

**Plaintiff,**

**-vs-**                                                    **Case No.  6:14-cv-329-Orl-18DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

# I.      BACKGROUND

## A.      Procedural History

Plaintiff filed for SSI benefits on September 29, 2010, alleging an onset of disability[1] on August 15, 2003, due to intermittent explosive disorder, Asperger's syndrome, dysthymia, and

_____

[1]Because it is an SSI application, and a claimant becomes eligible for SSI in the first month when he is disabled and has an SSI application on file, the ALJ considered Plaintiff's impairments from the application date, September 29, 2010. R. 64, 158; *see Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("[A] claimant becomes eligible [for SSI] in the first month where she is both disabled and has an SSI application on file.").

depression.  R. 51, 64, 130-39, 146, 158, 162. His application was denied initially and upon reconsideration.  R. 64-74. Plaintiff requested a hearing, which was held on September 21, 2012, before Administrative Law Judge Kelley Fitzgerald (hereinafter referred to as "ALJ").  R. 36-63.  In a decision dated January 3, 2013, the ALJ found Plaintiff not disabled as defined under the Act through the date of the decision.  R. 12-35. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on December 31, 2013.  R. 1-4. Plaintiff filed this action for judicial review on February 27, 2014.  Doc. 1.

### B.      Medical History and Findings Summary

Plaintiff was 17 years old on the application date, turned 18 on October 8, 2010, and was 20 years old when the ALJ issued the January 2013 decision. R. 30.  He has a high school diploma, and subsequently has enrolled in college, but has no past relevant work. R. 39-40, 162.   On September 29, 2010, the date the application was filed and a few weeks before his 18th birthday, Plaintiff fell into the age group of "Adolescents (age 12 to attainment of age 18)," but was categorized as an adult once he attained age 18 on October 9, 2010.   R. 19 (citing 20 CFR §§ 416.926a(g)(2)(v) and 416.120(c)(4)).

Plaintiff's medical history is set forth in detail in the ALJ's decision.  By way of summary, Plaintiff alleged he became disabled in August 2003 due to Intermittent Explosive Disorder, a mental health disorder, and Asperger's Syndrome, a neurological disorder her was born with, as well as depression, and dysthymia. R. 162.  The ALJ found that Plaintiff, before attaining age 18, had the severe impairments of intermittent explosive disorder (IED); Asperger's syndrome; affective disorder; and dysthymia. R. 20.  The ALJ found Plaintiff's limitations did not meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 20.  The ALJ found that the evidence established the following functional limitations from Plaintiff's impairments: less than marked limitations in the domains of acquiring and using information, attending and completing tasks,

interacting and relating with others, caring for himself; and no limitations in the domains of moving about and manipulating objects and health and physical well-being. R. 20-26.  Based on these limitations, the ALJ found that Plaintiff's impairments did not functionally equal any listed impairment. R. 26.

Next, in assessing Plaintiff's condition as an adult, the ALJ determined that, since turning 18 years old, Plaintiff suffered from intermittent explosive disorder; Asperger's syndrome; affective disorder; dysthymia; and hypertension, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  R. 27.  The ALJ determined that, since attaining age 18, Plaintiff had the residual functional capacity (RFC) to perform the full range of work at all exertional levels, but was limited to performing no more than simple, routine, repetitive task with no more than occasional interaction with co-workers, supervisors, and the general public.  R. 28.  The ALJ also determined that Plaintiff had no past relevant work.  R. 29.

Considering Plaintiff's vocational profile and RFC, the ALJ applied § 204.00 of the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and Social Security Ruling 85-15[2], concluding that Plaintiff could perform unskilled work at all levels of exertion, which existed in significant numbers in the national economy.  R. 29.  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, since October 8, 2010, the day Plaintiff attained age 18, through the date of the decision.  R. 30.

Plaintiff now asserts three points of error.  First, he argues that the ALJ erred by finding he did not have marked limitations in two domains pertaining to attending and completing tasks and

---

[2]According to the ALJ, based on Section 204.00 relying on SSR 85-15, where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work. These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis (SSR 85-15). R. 29-30.

interacting and relating to others and, therefore, did not have the functional equivalent of a listing so as to be considered disabled under the third step in the child and adult disability analyses. Second, he claims the ALJ erred in assessing his mental RFC (in the adult disability framework) by not providing substantial or controlling weight to the opinions of the treating mental health providers, and instead relying upon the contrary opinion offered by a non-examining one-time evaluator. Third, Plaintiff argues that the ALJ erred in assessing his credibility and an alleged manual dexterity limitation. The first two points concerning Plaintiff's non-exertional mental/social limitations are addressed together. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.      STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery*

*v. Sullivan*, 979 F.2d 835, 837 (11ᵗʰ Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

For an adult claimant, the ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. § § 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

In order for an individual under the age of eighteen to be entitled to Supplemental Security Income payments, the Child must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906. The rules[3] follow the three-step sequential evaluation, under which SSA will consider: (1) whether the child is working; (2) whether the child has a medically determinable "severe" impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the

---

[3]On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("the 1996 Act"), which amended the statutory standard for children seeking SSI benefits based on disability such that a child seeking SSI benefits based on disability will be found disabled if he or she has a medically determinable impairment "which results in marked and severe functional limitations," and which meets the statutory duration requirement. *Brawdy v. Barnhart*, No. Civ. A. SA01-CA-0835F, 2003 WL 1955839, at *3-4 (W.D. Tex. Mar. 27, 2003) (internal citations omitted). The final rules became effective on January 2, 2001. *Id.*

listings.  20 C.F.R. § 416.924.  Under the regulations for children, there are six domains used to determine a child's functional equivalence: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a.  Whether a child meets the "listing-level severity" standard is dependent upon whether the child has "marked" limitations in two broad areas of development or functioning or "extreme" limitation in one of those areas.  20 C.F.R. § 416.926a(d).    In assessing whether the Child has "marked" or "extreme" limitations, the ALJ must consider the functional limitations from all medically determinable impairments, including any impairments that are not severe, as well as the interactive and cumulative effects of the child's impairment or combination of impairments individually in each domain.  20 C.F.R. § 416.926a(c).

## III.    ISSUES AND ANALYSIS

### A.    "Marked" mental and psychological impairments

Plaintiff argues that the ALJ erred by finding he did not have "marked" limitations in two domains of functioning, which would have led the ALJ to find Plaintiff disabled. 20 C.F.R. § 416.926a. In this case, the ALJ considered whether Plaintiff was disabled either as a Child (before age 18) or as an adult (having reached the age of 18 in October 2010).  The ALJ properly outlined the three-step analysis applicable for children and the five-step analysis applicable to adults, noting that the determination of whether the functional equivalent of a listing for mental impairments under step 3 for both children and adults required marked limitations in at least two of the six domains (as cited above). R. 18-19. The ALJ found that the evidence established functional limitations from Plaintiff's impairments that were "less than marked" in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for himself; and "no limitations" in the domains of moving about and manipulating objects and health and physical well-

-6-

being. R. 20-26.  Based on these limitations, the ALJ found that Plaintiff's impairments did not functionally equal any listed impairment and consequently he was not disabled under the three-step analysis for children or at step 3 for adults due to lack of functional equivalent to a listed impairment. R. 22-27. The ALJ continued in the five-step analysis for adults, finding Plaintiff had the RFC to perform a full range of work at all exertional levels with limitations to no more than simple, routine, repetitive tasks with no more than occasional interaction with coworkers, supervisors, and the general public; thus, he could perform other work in the national economy and was not disabled.  R. 28.

Plaintiff argues that the ALJ erred by finding he did not have "marked" limitations in two of the  domains – attending and completing tasks and interacting and relating to others[4] –  thus, he did not have the functional equivalent of a listing so as to be considered disabled under the third step in the Child and adult disability analyses.  R. 226-27.  A "marked" limitation is one that "seriously interferes" with the ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2).  In finding less than marked limitations in these domains, Plaintiff argues, the ALJ failed to apply the correct legal standards, and her reasons for rejecting the favorable psychologist and counselor mental health evidence are not supported by substantial evidence.[5]  Plaintiff also argues that the ALJ erred in assessing his mental RFC by not providing substantial or controlling weight to the opinions of the treating mental health providers, and instead relying upon the contrary opinion offered by a non-examining one-time evaluator.

In responding to both argument, the Commissioner contends that substantial evidence supports the ALJ's evaluation of the medical opinions in the Record. Doc. 26.

---

[4]Plaintiffs arguments are limited to the findings for these two domains and do not raise issue with the findings for the other four domains.

[5] The Court and the parties generally cite only to the numbers in the lower right corner of the individual pages in the Administrative Record, *i.e.*, R. 1-505.  Plaintiff's citation to the Doc. Number is unnecessary since the Court has been provided with an electronic copy of the Transcript in the case. *See* Doc. 19 at 2 (requiring citations to the administrative record, not individual documents in the Court docket).

In determining a claimant's functional limitations or his residual functional capacity, the ALJ must assess his condition based on all relevant evidence of his remaining ability to do work despite his impairments.  20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.  *Id.*  Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.   20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.).

The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of nonexamining physicians, treating physicians' opinions are given more weight than non-treating physicians.  *McNamee v. Soc. Sec. Admin.*, 162 F. App'x 919, 923 (11th Cir. Jan. 31, 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical

evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f).

In addition to evidence from "acceptable medical sources," such as licensed physicians and psychologists, the ALJ *may* use evidence from "other sources," such as licensed clinical social workers, school counselors and teachers, and therapists, to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. *See* 20 CFR 404.1513(d) and 416.913(d).

Plaintiff contends that the ALJ's reasons for rejecting the opinions of the HBS psychiatrist and counselors in this case lack sufficient detail and do not constitute good cause. Doc. 25 at 15 (citing cases, including *Teletha Weaver v. Carolyn W. Colvin, Acting Commissioner of Social Security*, Case No. 3:12-cv-513-J-JRK, 2013 WL 4699278 (M.D. Fla. Aug. 30, 2013), for the proposition that explanations of the administrative law judge which lack sufficient detail do not constitute good cause). Plaintiff contends that the ALJ erred by giving no significant weight (without adequate explanation) to the opinions of the psychiatrist and two licensed mental health counselors from Halifax Behavioral Services – Dr. Greer, Mr. Townsend, and Ms. Marchese – all of whom opined that Plaintiff had "marked" or serious issues interacting and relating to others–based on their years of treating Plaintiff. In reaching her decision, the ALJ also gave "no significant weight" to the portion of the opinion of the non-examining reviewing psychologist, Dr. Heffron, who similarly opined that Plaintiff had "marked" limitations in the domain of interacting and relating to others. R. 28-29. The ALJ specifically determined:

> No significant weight is given to Dr. Greer's conclusions of September 26, 2012 (Ex. 27F) as they are not supported by treatment records or any rationale. No weight is given to the counselor's [Marchese's] opinion (Ex. 28F) as it is vague, non-date specific, and not supported by school or medical records. Moreover, the opinion was made by a Licensed Mental Health Counselor and not an acceptable medical source and the opinion is not supported by any medical evidence. Likewise, the opinion of Mr. Townsend (Ex. 26F) deserves no weight as the limitations are not supported by

the record and were issued by a Licensed Mental Health Counselor[6]. The DDS opinion [by Dr. Heffron] notes "marked" limitations in interacting and relating with others (Ex. 21F/3) deserves no credible weight. While the claimant has a history of problems with interaction, "marked" restriction is not supported by the record as of the application date. The remainder of the DDS opinion (Ex. 21) is not inconsistent with the record and deserves more weight. The opinion of the State agency psychologist [Reback] (Ex. 17F) deserves significant weight as it is unbiased and well supported by specific findings in the medical record.

R. 28-29.  While the ALJ's reasoning in this section of the decision is not extensive, when the ALJ's decision is viewed as a whole, her reasoning is well-supported and based on substantial evidence from the medical records – particularly the two consultative examinations and the Vocational Rehabilitations/UCP assessment– and Plaintiff's and his mother's testimony.

By the time of the hearing before the ALJ in September 2012[7], when Plaintiff was in his first year of college, Plaintiff had a long history of psychological treatment from a young age, at least since elementary school.  He first received counseling with Atlantic Counseling Center for depression in 1999, from the time he was six or seven years old, until 2002. R. 147, 167. In 2002, he was also diagnosed with Asperger's Syndrome and received treatment for both impairments through 2008 from various psychologists. R. 148-52, 166-68. In 2008, Plaintiff was diagnosed with Intermittent Explosive Disorder and he was treated by psychologists at Halifax Behavioral Services (HBS) as an inpatient (September 2009) and as an outpatient from 2008 to 2012. R. 47, 150, 166. During his treatment during his teenage years, Plaintiff was prescribed a variety of medications, including Abilify, Geodon, and Depakote for mental health issues, and Lexapro for depression. R. 46, 154, 164.

---

[6]Plaintiff argues the ALJ also erred in finding the opinions of the Licensed Social Worker and Licensed Mental Health Counselor at HBS were due "no weight" implicitly because they were not from a physician. The Court need not address this argument, given the Court's finding the ALJ did not err in discounting their opinions based on evidence in the Record that Plaintiff's impairments had improved sufficiently on medication that he was able to graduate from high school and attend college.

[7]The ALJ left the record open until October 9, 2012 at Plaintiff's request. R. 62.  The ALJ issued her decision on January 3, 2013. R. 12.

Plaintiff was academically relatively successful in elementary and middle school and was promoted each year. R. 297, 310.

Plaintiff did not have academic difficulties until ninth grade when he was failing most of his classes and interventions were implemented for him at the high school; in addition to classroom-based help, he attended a weekly social skills group for students diagnosed with Asperger's Syndrome[8], as well as an anger management group outside school. R. 297 (March 2008), 311. In September 2009, at sixteen years old, Plaintiff was admitted voluntarily as an inpatient at HBS for two days because "he was worried he might hurt someone" and "would not be able to control his anger" after he got into a fight at school with another boy who was talking about him; he was released after a family meeting and meeting other goals. R. 260.

Toward the end of the school year, Plaintiff received a new Individual Education Plan (IEP) in April 2010 which indicated, based on standardized testing, parent input, teacher observation, and curriculum-based assessment, he was believed capable of being successful in the general education curriculum with support but was "not achieving his potential." R. 282-84. He was placed in a general education classroom in a co-teaching setting, for his core classes and he was failing half of his classes; he was not on track for graduation with too few credits and a subpar GPA; he had a pattern of failing to turn in assignments. R. 284-85, 292. However, he was functioning at or above grade level in reading and math, and other testing indicated his comprehension, fluency, and spelling were at or above grade level; his scores on the PSAT were also at or above grade level, which indicated that he had the aptitude for college. R. 284. Teachers and school guidance staff recognized that Plaintiff was friendly and respectful, and seemed to be liked by his peers, however, he had problems handling teasing and managing anger/extreme frustration; instances of teasing or bullying seemed to occur

---

[8]The school psychologist, Elizabeth Hensen, diagnosed Plaintiff with Asperger's Syndrome, on May 8, 2008. R. 297-305.

more during unstructured time, with miscellaneous students knowing they could upset him by saying things like "Michigan sucks!" in crowded hallways.  R. 284.  Two of three referrals for discipline were for physical altercations with a peer, and three days were out of school suspension.  R. 284. Plaintiff also had difficulty with organizational skills, keeping track, completing, and turning in homework and make up class assignments.  R. 284. Goals were set for Plaintiff to remain calm and not react to teasing, self-advocate, increase writing skills, time management skills, and improve conversation skills. R. 286-88.  During this time period, in September 2010, Plaintiff applied for SSI; he subsequently told the consultative examiners he wanted to obtain placement in an ALF [adult living facility] when he turned 18 and he wanted to "get out on his own" because he was "tired of ultimatums from his parents."  R. 277, 385.

During the new school year, in November 2010, Plaintiff was making grades of A and B after two quarters of his 11th grade year.  R. 306.  Plaintiff subsequently reported that he had made the honor roll for three quarters in his senior year. R. 192, 417-18, 450-51.  He graduated from high school in June 2012 and was enrolled at Daytona State College as of fall 2012.  R. 230.  He reportedly stopped receiving counseling in June 2012 when he finished high school and his weekly counseling sessions at HBS ceased in December 2011.  R. 50, 230.  During his senior year of high school he participated in a career exploration course that involved some community work at a Big Lots store stocking shelves and marking inventory.  R. 230.

Plaintiff contends that the ALJ erred in giving no significant weight to the opinions of the two licensed mental health counselors, Ms. Marchese and Mr. Townsend.  The ALJ discounted the two licensed mental health counselors' opinions because she found that neither opinion was supported by school or medical records.  The ALJ also rejected the opinions of the two psychologists, Dr. Greer (treating) and Dr. Heffron (non-examining/reviewing) that Plaintiff had "marked" limitations

interacting and relating to others because, the ALJ found, these opinions were not supported by treatment records.  R. 28-29.

The ALJ noted that both Dr. Greer and Dr. Heffron opined Plaintiff was "markedly" limited in interacting and relating with others.  R. 22.  She accurately described Dr. Greer's opinion on the check-off type form prepared at the request of claimant's counsel on September 26, 2012 (a few days after the September 21, 2012 hearing) which noted "the claimant to have marked difficulties in maintaining social functioning, in maintaining concentration, persistence, or pace, in understanding and memory, in social interaction, and in adaption. The claimant has moderate and marked limitations in sustained concentration and persistence." R. 22 (citing R. 125-29).  Dr. Greer did not list specific examples, though the form called for them. R. 126-27.  The ALJ also accurately summarized the letters from the counselors:

> On October 8, 2012, John D. Townsend, LCSW, noted that the claimant cannot sustain employment due to a limited social skill set and explosive temper (Ex. 26F).
>
> Marilyn Marchese, LMHC, opined on October 17, 2012 that IED and Asperger's affected the claimant's ability to function socially and academically. Through the past several years the claimant has exhibited symptoms of depression and anxiety. The claimant has a decreased chance of employment success and is unable to be substantially employed due to his extremely limited social skills ability and his very explosive and aggressive temper according to the counselor (Ex. 28F).

R. 22 (citing R. 492; 504-05).  There are no notes from the therapy sessions with either counselor. There are references in the HBS medical records that Plaintiff had been prescribed therapy with the counselors, although outside HBS therapy stopped in December 2011 and the school therapy stopped in June 2012.  R. 50, 230.

The ALJ acknowledged that Plaintiff had had a "history of problems with [social] interaction," but found a "marked" restriction was not supported by the record as of the application date (September 29, 2010), *i.e.*, about the time he turned 18 years old on October 9, 2010. R. 15, 29. The ALJ instead gave significant weight to the opinion of the State agency psychologist, Dr. Reback

(dated January 2011) – which noted based on the notes of the consultative examination that Plaintiff's Asperger's disorder was in remission and he was doing well at school with no outbursts this year (R. 410) – as "well supported by specific findings in the medical record." R. 29; R. 406 ("[He] appears to have responded well to pharmacological & behavioral interventions, resulting in improved social skills & decreased episodes of anger outbursts.").

The Commissioner argues that the ALJ sufficiently discussed treatment records with generally normal findings and points out the treatment notes from the relevant time period indicate Plaintiff's symptoms were "85% controlled," he was doing "really well" on his medication, and he made the honor roll, graduated from high school, and was going to attend Daytona State that fall. R. 417-18, 450-51.

The ALJ properly summarized the treatment notes from Dr. Greer's mental health center, Halifax Behavioral Services (HBS), in her decision (R. 21), albeit in the context of discussing the Step 3 Child -functional equivalence determination. R. 20. The ALJ cited the HBS treatment notes from October 11, 2010 – just days after Plaintiff's eighteenth birthday – which included Plaintiff's and his mother's reports to the psychiatrist at HBS (Dr. Maria Masterrer), their belief that Plaintiff's symptoms "were controlled = 85%." R. 21 (citing R. 418). Plaintiff was no longer prescribed individualized therapy (at that time) but continued to receive medication management every three months. R. 418. Plaintiff appeared to be on track with is medication at the next medication management appointment on January 11, 2011 with Dr. Greer, who made very few notes, stating Plaintiff was "doing well" and checking the boxes for good affect/mood, organized thoughts, and adequate judgment; the "objective" was described simply as "anger management"; his medications were continued. R. 419. The ALJ cited HBS records from Plaintiff's next appointment three months later, dated April 4, 2011, noting Plaintiff's quoted statements: "I am doing really well on my medications" and "I made honor roll all three semesters this year so far" during his junior year of high

-14-

school. R. 21 (citing R. 417, 456). The ALJ also cited the HBS treatment record dated fifteen months later, on July 16, 2012, which noted Plaintiff's subjective statement the he was "doing good at this time" and he had "graduated from high school" and was "going to Daytona State in fall"; Dr. Greer wrote that Plaintiff was "doing well, no changes." R. 21; R. 450. The ALJ additionally cited records from Plaintiff's primary care physician during the relevant period (2010 and 2011) that noted Plaintiff was being treated at HBS for depression with IED and reported he was "currently on medication and doing well," had no complaints, and had no depression or memory problems. R. 21 (citing R. 460-61).

Plaintiff is correct that the ALJ mis-cited the HBS nurse's messy, handwritten[9] April 19, 2012 treatment note as "the claimant *has stabilized* and *no longer requires services*," (R. 21) when the nurse had actually written in the section listing "discharge criteria" that he would be discharged when "Pt [patient] stabilizes and no longer requires services." R. 449. This error is harmless in that the ALJ recognized that Plaintiff had not "stabilized," but was actually still receiving treatment from HBS as late as July 2012 because she included the notes from the July 16, 2012 appointment in her discussion. R. 21. The content of the nurse's statements themselves are rather self-evident: the patient would receive services until he "no longer requires services" and the "barriers to treatment" are "none, if compliant." R. 21; R. 449. Moreover, the error is harmless in that Dr. Greer's note on April 19, 2012 indicates Plaintiff's and his mother reported he was "doing very well with is medication changes" and Dr. Greer prescribed "no changes." R. 451. Additionally, other medical records from HBS and the consultative examiners indicate between 2011 and 2012 he had improved on the medications, had made honor roll for three semesters, had graduated from high school, and had enrolled in college.

---

[9]The signature of the "Participating RN" is illegible. R. 449.

The ALJ accurately summarized and the records from the two consultative psychological examiners from the relevant time period, which support her finding that Plaintiff was "less than marked" in social interactions and relating to others.  The ALJ cited the consultative evaluation by Dr. Ludvigh (June 2010) which noted Plaintiff's reports of improved social skills, successful passing of the FCAT and "just two suspensions in the last school year for fighting"; and that Plaintiff was seeking to work part-time while attending school.  R. 21, 277.  Plaintiff told Dr. Ludvigh he "would like to move out of his home because he is 'tired of ultimatums' from his parents concerning his behavior."  R. 277.  The ALJ also cited the consultative examination by Dr. Graham (December 2010) which noted Plaintiff's reports that "he was applying for disability benefits because he wants to get out on his own."  R. 21, 385. Dr. Graham noted Plaintiff's reports that he had not demonstrated any anger outbursts during the year at school (August to December 2010).  R. 21.  Both psychologists diagnosed Asperger's disorder by report, finding Plaintiff displayed "relatively mild symptoms" or no symptoms or was "in remission."  R. 21, 280, 387. The ALJ cited Dr. Ludvigh's opinion that Plaintiff's medication had significantly reduced his episodes of aggressive behavior related to the IED.  R. 21, 280 ("These episodes of aggressive behavior have reportedly been significantly reduced through psychotropic medication.").

In the context of discussing Step 3 of the Child functional-equivalence assessment, the ALJ explained her reasoning for finding Plaintiff "less than markedly" limited in the domain of "interacting and relating with others":

> This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others (20 CFR 4 1 6.926a(i)).
> * * *
> Before attaining age 18, the claimant had less than marked limitation in interacting and relating with others. The claimant reported that his medication improved his social skills (Ex. 5F; 25D).  He testified that while in high school he performed some volunteer work at a retail store. The claimant's teacher reported no problems in this

domain (Ex. 4E/4). Although the State agency medical consultant assessed "marked" limitations in this domain, I find that this level of limitation is not supported by the record as of the application date.

R. 24.   The ALJ also noted in considering Plaintiff's limitations at Step 2 and 3 on the Adult

assessment:

> Since attaining age 18, the claimant has had mild restriction in activities of daily living. The claimant testified that he partakes in a wide array of daily activities including attending college and performing household chores such as washing dishes, cleaning his bedroom, and taking care of the dog. *In social functioning, the claimant has moderate restriction as he experiences occasional blow ups according to his mother's testimony but lives with family, rides the public bus, takes on-campus classes, and walks around the neighborhood. The claimant also has an active Facebook account.* In regards to concentration, persistence, and pace, the claimant has mild limitation as he successfully attends college, reads and uses a computer, and utilizes public transportation. As for episodes of decompensation, the record reveals none that have been of extended duration.

R. 27 (emphasis added).

The ALJ recognized that Plaintiff's social limitations relating to others had improved on

medication:

> At the hearing, the claimant testified he has a 12th grade education, lives with his family, and attends Daytona State College. The claimant stated that his mother wants him to stay in college rather than getting a job and working. The claimant reported he attends college classes and at home performs household chores including washing dishes, cleaning his bedroom and feeding and letting out the dog. He stated he has no limitations with his personal hygiene. The claimant uses a computer and has a Facebook account. For exercise, he reported that he walks around the neighborhood and works out on machines. *The claimant testified that his medication is helpful and causes no side effects.*

> The claimant's mother testified that the claimant "blows up" every six months. She stated he has difficulties relating to people, does not understand sarcasm or conversation nuances, and that other people do not understand him. The claimant's mother testified that the claimant cannot work because people have difficulties dealing with him though she also mentioned that Vocational Rehabilitation is paying for the claimant's college and bus pass. *The claimant has not "blown up" since his medication was adjusted seven months ago according to his mother.*

> Schools records dated May 2009 show that the claimant served one three-day suspension (Ex. 6F/4). The claimant's most recent school suspension occurred in February of 2011 (Ex. 18E/3). A Teacher Questionnaire completed on December 2,

-17-

2010 by Kimberly McGinley notes the claimant as having no problems interacting and relating with others (Ex. 4E/4).

R. 21 (emphasis added).

The ALJ properly considered the longitudinal history of Plaintiff's Asperger's syndrome and depression history and the treatment he received.  By Plaintiff's own admission (and his mother's) with medication and compliance his condition and outbursts improved. He was successful in graduating from high school on the honor roll his senior year and enrolling in college. While the ALJ's reasoning in the portion is the decision quoted by Plaintiff is not lengthy, the ALJ's discussion of the treatment records and relevant testimony is sufficiently detailed when the ALJ's decision is viewed as a whole.  This case is fairly unusual in that, because Plaintiff filed the application *one week* before he turned 18 years old, the ALJ was required to assess his condition under the guidelines for assessing a child's functional equivalence, in addition to the adult guidelines for an individual on the cusp of adulthood.  The ALJ cannot be faulted for discussing the supporting medical records in the sections that were more appropriate to each age category.  When the ALJ's decision is considered as a whole, her reasoning is well-supported and based on substantial evidence from the medical records and Plaintiff's and his mother's testimony. Thus, the ALJ's decision was based on substantial evidence.

**B.    Other issues with the ALJ's credibility and RFC assessments**

Plaintiff additionally argues that the ALJ erred in assessing his credibility as part of the RFC analysis because the reasons for rejecting his credibility based on his academic abilities in his school and college are not supported by substantial evidence.  Plaintiff also argues that the ALJ erred in omitting his manual dexterity limitation from his RFC. Doc. 25 at 24-25.

Where an ALJ decides not to credit a claimant's testimony about his subjective symptoms, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to

the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective limitations testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff argues that the ALJ erred in finding that Plaintiff graduated from high school and attends college full-time without recognizing that he was "in special education classes" and received IEP accommodations in high school, took an extra year to graduate, and had dropped a class in college, so he was no longer a "full-time" student. The Commissioner argues that Plaintiff was "not on track for graduation" as early as April 2010 (R. 284) before the relevant period, and with support in general education classes (R. 294-95), his mother reported he was "finally getting good grades" and he graduated with the standard diploma. R. 184.

As the Court specifically discussed above, Plaintiff was not in "special education classes" but in general education classes "co-taught" or with supplemental help. Plaintiff failed most of his classes in ninth grade and the intervention by the high school first began. Plaintiff was also doing poorly in tenth grade until a new detailed IEP in April 2010 was put in place. Based on standardized testing, Plaintiff was intellectually capable of learning the material in the core classes. Under the IEP, he was to be provided assistance/accommodations for turning in his work and reducing distractions; he additionally participated in group therapy run by the guidance department for students with Asperger's syndrome. Once these changes were in place, Plaintiff subsequently made the honor roll in eleventh grade, and graduated with a standard diploma, progressing to Daytona State College. Despite dropping one college class, Plaintiff remained enrolled in ten credit hours, nearly a full load and certainly a demanding schedule. R. 225. Plaintiff passed the College Placement Test for Daytona

State College and was enrolled in core classes prerequisite for an associate's degree in general studies, with hopes of transferring to a bachelor degree program at UCF.  R. 230.

Plaintiff also argues that the ALJ erred in finding his receipt of education and transportation benefits from the State of Florida Department of Vocational Rehabilitation meant that the agency believed him capable of performing at least simple, routine, or repetitive tasks and not "completely unable to interact with others." R. 28.  Plaintiff contends the agency's vocational plan indicates that he is to take advantage of other funding sources, including SSI; thus, the fact that Vocational Rehabilitation subsidizes his college education with the goal of obtaining a degree is not inconsistent with his application for SSI.  Regardless of whether Plaintiff was expected to take advantage of other programs such as SSI, the fact remains that he was enrolled in classes at the local college, with the goal of transferring to a four-year program such as UCF, and the ALJ was entitled to take that accomplishment into account.  The ALJ's assessment of Plaintiff's credibility and her reliance on Plaintiff's ability to graduate from high school with a standard diploma and enroll in college was based on substantial evidence.

Plaintiff also argues that the ALJ committed error in the RFC assessment by not considering what he describes as a manual dexterity or "fine motor" impairment.  Doc. 25 at 25 (citing 20 C.F.R. § 416.945(a)(2) & SSR 96-8p (requiring the ALJ to consider all impairments, not just those which are severe, in assessing RFC)). Plaintiff argues that both he and his mother provided evidence that he had difficulty with fine motor skills, such as handwriting, and the Vocational Rehabilitation evaluation show that Plaintiff scored "below average" on manual dexterity and coordination. R. 237. Plaintiff argues this error is particularly important because the two jobs identified by the VE, the bone picker job and the waste-paper job, in response to the hypothetical by *Plaintiff's counsel* (not the ALJ) involved manual dexterity and coordination which may be inappropriate jobs when the manual dexterity impairment is considered.   The Commissioner argues that the same evaluation Plaintiff

completed in December 2010 indicating that he scored "below average" on manual dexterity and coordination contains Plaintiff's self-assessment reporting that he had no restrictions in handling, fingering, or feeling.  Doc. 26 at 19 (citing R. 234). The Commissioner also points out that Plaintiff also testified he had no limitations in feeding, dressing, or washing himself, and neither he nor his mother mentioned any fine motor impairments at the administrative hearing. *Id*. (citing R. 36-63, 47-48).  Further, the Commissioner contends that any limitation of fine manual dexterity would have relatively little impact on his ability to work because the ALJ determined Plaintiff could perform work at all exertional levels.

The Court finds that Plaintiff never raised any issue with his dexterity, thus such issue is waived. *See Street v. Barnhart*, 133 Fed. Appx. 621, 627 (11th Cir. 2005) (noting "it has been persuasively held that an '[ALJ] is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability'") (internal citation omitted).  Moreover, Plaintiff's argument about the impact of a "fine motor/manual dexterity" limitation on the two positions proposed by the VE is a red herring in that the ALJ did *not* rely on the VE's testimony, but determined that Plaintiff could perform unskilled work at all exertional levels because, although compromised by non-exertional limitations, he could meet the mental demands of unskilled work.  R 28 finding 9 (relying on Section 204.00 in the Medical-Vocational Guidelines and Social Security Ruling 85-15, which advises where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work; these jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such job on a sustained basis).  The ALJ's RFC finding which omitted any manual dexterity limitation was based on substantial evidence.

## IV.   CONCLUSION

The record in this case shows that Plaintiff had significant difficulties with anger, organizational skills, and social relations during certain period of his high school career, even causing him to repeat a grade.  However, with the appropriate guidance, support, and treatment, he has been successful in moving past these issues.  The ALJ appropriately considered Plaintiff's circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act.  For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.  Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on July 23, 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

-22-